UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



DANIEL A. SUTHERLIN,

        Plaintiff,

vs.                                            Case No.

ACE AMERICAN INSURANCE COMPANY
(f/k/a CIGNA INSURANCE COMPANY), a
Pennsylvania corporation, OLDCASTLE
MATERIALS SOUTHEAST, INC., a Delaware
corporation, LIFE INSURANCE COMPANY
OF NORTH AMERICA, a Pennsylvania
corporation,

        Defendant.

TROY W. HANEY (P48614)
Dilley & Haney, P.C.
*Attorney for Plaintiff*
330 East Fulton
Grand Rapids, MI 495033
Telephone:   616/235-2300
Facsimile:   616/459-0137
E-mail:      thaney@dilleyhaneylaw.com

## COMPLAINT

NOW COMES plaintiff, Daniel A. Sutherlin, by his attorney, Troy W. Haney of

Dilley & Haney, P.C., and for his Complaint against defendant, state as follows:

## NATURE OF ACTION AND JURISDICTION

1.      This is a civil complaint brought under ERISA §502, 29 USC 1132, regarding

breach of the terms of an employee benefit plan and breach of fiduciary duty,

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137

DILLEYHANEYP.C.
ATTORNEYS AT LAW

for the purpose of compelling defendant to provide certain disability insurance benefits in the amounts and at the coverage levels promised and for an accounting, recovery of damages, costs and attorney fees incurred as a consequence of defendant's failure to do so.

2.     This Court has jurisdiction pursuant to ERISA §§502(e)(1), (f), 29 USC 1132(e)(1), (f), and 28 USC 2201.

3.     Venue properly lies in this District pursuant to ERISA §502(e)(2), 29 USC 1132(e)(2).

### PARTIES AND GENERAL ALLEGATIONS

4.     Plaintiff, Daniel A. Sutherlin, is a participant, within the meaning of ERISA §3(7), 29 USC 1002(7), in an Employee Benefit Plan with short and long term disability benefits ("Defendant Plan") by virtue of his former employment with Michigan Paving & Materials Co.  Plaintiff resides in the City of Grand Rapids, State of Michigan.

5.     The subject Plan became effective as to Plaintiff on or about date of hire on February 19, 2001, Policy No. SLK0001083.

6.     Defendant Plan is a group insurance plan within the meaning of ERISA §3(1), 29 USC 1002(1).  The Plan was issued by defendant to OldCastle Materials, as policyholder.

7.     Defendant, Ace American Insurance Company f/k/a Cigna Group Insurance (hereinafter "Cigna") is a corporation with a licensing address located in

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137

DILLEYHANEY P.C.
ATTORNEYS AT LAW

2

Philadelphia, Pennsylvania, that is and was at all material times doing business in this district. Cigna is a fiduciary and administrator, within the meaning of ERISA §§3(16), 402(a),(2), 29 USC 1002(16), 1102(a)(2), with respect to the Plan.

8. Defendant, OldCastle Materials Southeast, Inc., is a foreign profit corporation with a registered office address in Bingham Farms, Michigan, that is and was at all material times doing business in this district. OldCastle is the Plan Administrator, within the meaning of ERISA §§3(16), 402(a),(2), 29 USC 1002(16), 1102(a)(2), with respect to the Plan.

9. Defendant, Life Insurance Company of North America, is a corporation with a licensing address located in Philadelphia, Pennsylvania, that is and was at all material times doing business in this district. Life Insurance Company of North America is the underwriting company of the policy referenced above and is a fiduciary and administrator, within the meaning of ERISA §§3(16), 402(a),(2), 29 USC 1002(16), 1102(a)(2), with respect to the Plan.

10. The above Plan provided income benefits caused by short and long term disability.

11. At all times relevant, Plaintiff was employed by Michigan Paving & Materials Co (hereinafter "Michigan Paving").[1]

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137

DILLEYHANEY P.C.
ATTORNEYS AT LAW

---

[1]

By way of history, at the time of his hire, the company name was "Woodland Paving". Approximately one year after his employment with the company, OldCastle Materials bought Woodland Paving and renamed it "Michigan Paving & Materials Company".

3

12. Plaintiff became employed with Michigan Paving on February 19, 2001. At the time of disability, plaintiff's job title was a bituminous lab technician. Plaintiff was a full-time employee whose regular duties required him to stand, stretch, climb, lift and move heavy objects throughout his work day.

13. During his employment with Michigan Paving, Plaintiff was diagnosed with the following disabling medical conditions:

- Left sided upper quadrant abdominal pain;
- Thoracic lumbar radiculitis;
- Degenerative disc disease;
- Posterior disc bulge at L3-4;
- Central disc protrusion at L5-S1;
- Somatic dysfunction;
- Thoracic spine pain.

14. Due to his disabilities, the Plaintiff's last day of work for Michigan Paving was June 24, 2004.

15. Plaintiff applied for short term disability benefits in July, 2004.

16. Despite the above correspondence, on September 24, 2005, defendant Cigna denied continued short term disability benefits on the grounds that:

> "Your occupation, as defined in the Dictionary of Occupational Titles, is classified as a light occupation. The medical evidence on file does not sufficiently demonstrate that you are totally impaired from performing light occupational duties."

17. In response to Cigna's denial of benefits, David A. Dietz, Division Manager for Michigan Paving & Materials Co. corresponded with Cigna Group Insurance on October 4, 2004, stating, in part, as follows:

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137

DILLEYHANEY P.C.
ATTORNEYS AT LAW

4

"This letter is written on behalf of Daniel Sutherlin and is in reference to his inability to perform the regular job duties of his position as a bituminous lab technician. I have been told that Dan's claim for short-term disability was denied primarily due to his position being defined as a light duty occupation in the Dictionary of Occupational Titles. I am not certain what definition was applied to Dan's position, but it sounds as though it may have been incorrect. If Dan's position, for the purposes of definition, has been interpreted to be that of a laboratory technician in anything other than the construction field, that would be incorrect. The regular duties of a bituminous lab technician are anything but light duty. These regular duties include, but are not limited to those listed below. I have attempted to list the steps involved in each duty in an effort to illustrate how many times in any given day our lab technicians are required to stand, stretch and climb and to lift and move heavy objects.

- Collect Aggregate Samples
  ‣ Push/pull a cart with an empty metal 5-gallon bucket from the lab to any p articular aggregate stockpile.
  ‣ Climb onto the stock pile in a random location and dig a shovel full of aggregate, carry that shovel full of aggregate back to the bucket, climb back onto the pile at another random location and repeat the process until a sample of between 55 and 75 pounds has been collected.
  ‣ Push/pull the cart and sample back to the lab for splitting and testing.
  ‣ This is repeated several times in any given day around our approximately 14 acre site.

- Split Aggregate Samples
  ‣ Lift the aggregate sample bucket (55 to 75 pounds) and dump it into a splitter box. The sample is split into two metal collection bins, each of which weights approximately 8 pounds empty.
  ‣ These half samples are dumped back into buckets and re-split again.
  ‣ This process is repeated until a final sample of approximately 2500 grams (5.5 pounds) is acquired. This will take from 3 to 4 repeats of the process, each one involving bending and lifting several times.

- Test Aggregate Samples
  ‣ The final split sample is dumped into a stack of sieves (26 pounds without sample and 32 +/- pounds with sample),

330 E. Fulton
Grand Rapids, MI 49503
Telephone: 616/235-2300
Fax: 616/459-0137


DilleyHaney P.C.
ATTORNEYS AT LAW

5

which is moved into a shaker for a time.

‣ After shaking, the stack of sieves with sample is lifted back to a lab table where each sieve is removed individually and its contents dumped and weighed.

‣ The tested aggregate is dumped back into a bucket and collected for return to the yard.

• Collect Hot Mix Samples

‣ Push/pull a cart with an empty metal 5 gallon bucket to the sample rack.

‣ Climb the sample rack (18 steps) with the empty bucket in hand, climb into the back of the truck, shovel hot mix into the bucket from several random spots within the load until the bucket is 3/4 full (75 +/- pounds), hand the full bucket to a spotter outside of the truck, climb back out of the truck, and carry the full bucket back down (18 steps) to the cart.

‣ Push/pull the cart and sample back to the lab for splitting and testing.

‣ This process is repeated several times in any given day.

• Split Hot Mix Samples

‣ Lift the sample bucket (75 +/- pounds) and dump onto the heated splitter table.

‣ Using a 30-inch long straight edge split the hot mix sample into several splits of varying sizes. Since the table is hot, this work is not done with arms close to the body but stretching with outreached arms.

‣ The splits of the sample are deposited into multiple containers and carried to various parts of the lab for different types of testing. One split of the mix has the asphalt cement extracted and is tested in the same manner as the aggregate is tested, as outlined above.

• Test Hot Mix Samples, including but not limited:

‣ Pinctometer testing - pot and sample combined weigh 12 +/- pounds.

‣ Gyratory testing - mold and sample combined weigh 32 +/- pounds.

‣ Marshall Hammer testing - sample weighs 4 +/- pounds, hammer weighs 24 +/- pounds.

‣ Each of these tests can involve multiple handlings of the sample and container for one test.

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137

DILLEYHANEY P.C.
ATTORNEYS AT LAW

6

- ▸ These tests are repeated several times in any given day.
- • Other Routine Duties include, but are note limited to:
  - ▸ Handling, splitting and testing hot mix bagged samples delivered to the lab from the job site (35 to 40 pounds).
  - ▸ Handing, cutting, measuring and weighing core samples (5 to 12 pounds).
  - ▸ Cleaning up after tests, involves collecting and disposing of the same samples that were tested.
  - ▸ Cleaning and reorganizing lab equipment and supplies daily.

18. Despite the above explanation of plaintiff's job duties, on January 4, 2005, Cigna upheld their decision to deny short term disability benefits and invited the plaintiff to appeal their decision.

19. Plaintiff's counsel submitted an appeal of this decision on June 28, 2005, providing a Physician's Statement of Disability signed by board certified anesthesiologist, Kevin Fitzgerald, M.D. which states, in part, as follows:

"6.     On January 5, 2005, I evaluated Mr. Sutherlin and my diagnosis included somatic dysfunction, thoracic spine and thoracic spine pain.

7.     I have prescribed Mr. Sutherlin Vicodin ES for his ongoing pain.

8.     It is my opinion that Mr. Sutherlin has reached "maximum medical improvement".

9.     It is my understanding that when I first met Mr. Sutherlin on June 11, 2004, he was employed as a bituminous lab technician for Michigan Paving & Materials Co.

10.     I have reviewed the attached correspondence from David Dietz and understand that the regular duties of a bituminous lab technician is field work which includes collecting and splitting aggregate samples,

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2400
FAX: 616/459-0137

DILLEYHANEY P.C.
ATTORNEYS AT LAW

7

> *testing aggregate samples, collecting hot mix samples, split and test hot mix samples, all of which can require lifting as much as 75 pounds.*

11. *The other routine duties of a bituminous lab technician are:*

- *Handling, splitting and testing hot mix bagged samples delivered to the work lat from the job site which can way between 35 to 40 pounds each;*
- *Handling, cutting, measuring and weighing core samples which can way between 5 to 12 pounds each;*
- *Cleaning up after tests, which involves collecting and disposing of the same samples that were tested;*
- *Cleaning and reorganizing lab equipment and supplies daily.*

12. *I would recommend a Functional Capacities Evaluation for more accurate evaluation.*

13. *It is my opinion that Daniel Sutherlin's disability existed on June 24, 2004, and for some time prior to that.*

14. *Furthermore, it is my opinion that Daniel Sutherlin is disabled from any and all employment at this time."*

20. Despite the above-described correspondence and Physician Statement, Cigna issued a final determination of benefits on November 7, 2005

21. Plaintiff's documented residual and full disability precluded him from performing the job duties described in the previous paragraphs.

22. Premiums were regularly paid in the above-described Plan and proof of loss and demand for short-term disability payments have been made upon

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137

DILLEYHANEY P.C.
ATTORNEYS AT LAW

8

Defendant in a timely fashion by Plaintiff in accordance with the Plan terms for the monthly indemnity provided by the policy.

23. Plaintiff has provided Defendant with all required proof of disability and has complied with the terms of Defendant's residual and full disability policy.

24. There can be no dispute over whether or not Plaintiff's treating physicians have completely disabled him from his employment at Michigan Paving.

25. Defendant's decision to deny this claim is arbitrary, capricious and without any support whatsoever. The only reasonable explanation for defendant's denial of this claim is bias, self-dealing and/or a complete absence of due process entitling Plaintiff to conduct certain discovery.

26. Defendant has wrongfully and without legal basis refused to pay Plaintiff's partial and full disability claims pursuant to their policy and has wrongfully denied Plaintiff's appeal from its decision.

**COUNT I**
**ACTION UNDER ERISA §502(A)(1)(B), 29 USC**
**1132(a)(1)(B) TO RECOVER FULL BENEFITS**

27. Plaintiff incorporates herein by reference Paragraphs 1 through 26 as though fully set forth herein.

28. The failure to pay residual and full disability benefits as described above are in direct violation of the terms of the Plan.

29. The Plan has failed to pay disability benefits to plaintiff despite the recommendations of his physicians and his disabling medical conditions.

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137

DILLEYHANEY P.C.
ATTORNEYS AT LAW

30. The failure and refusal of the Plan to pay the benefits owed plaintiff under the Plan is a breach of the terms and provisions of the Plan.

31. In addition, the Plan has failed to properly and thoroughly investigate plaintiff's claim in the manner required by ERISA's fiduciary and claims procedure requirements.

32. The actions of the Plan have caused damage to plaintiff in the form of denial of his short term disability benefits.

33. In addition, because the Plan has failed to grant plaintiff short term disability benefits, plaintiff became ineligible for other benefits provided through his employment such as pension and medical benefits.

## PRAYER FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief:

A. A declaratory judgment pursuant to ERISA §502(a)(1)(B), 29 USC 1132(a)(1)(B), and 28 USC 2201, declaring that Plaintiff is entitled to the group employee benefits in the proper amounts as set forth in the Plan in effect at the time benefits became payable and that Defendants have violated the Plan and its fiduciary duties by failing to pay these benefits.

B. Preliminary and permanent injunctions pursuant to ERISA §502(a)(3), 29 USC 1132(a)(3), and Fed R Civ P 65, enjoining Defendants from discontinuing, reducing, limiting, or terminating the employee benefits payable to Plaintiff under the Plan.

C. A full and accurate accounting by Defendants of all computations for Plaintiff's employee benefits, in sufficient detail so that Plaintiff may ascertain that his benefits are being paid in the proper amount.

D. An Order compelling Defendants to pay Plaintiff forthwith the full amount of employee benefits due him and to continue such payments

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137


DILLEY HANEY P.C.
ATTORNEYS AT LAW

for the period set forth in the Plan, including interest on all unpaid benefits.

E.     Disgorgement of any profits or gain Defendants have obtained as a result of the wrongful action alleged in this Complaint and equitable distribution of any profits or gain to Plaintiff.

F.     Reasonable attorney fees and costs, pursuant to ERISA §502(g)(1), 29 USC 1132(g)(1).

G.     Such other relief as may be just and appropriate.

Dated: March 9, 2006                     Respectfully submitted,

                                         DILLEY & HANEY, P.C.

                                         By: _____
                                             Troy W. Haney (P48614)
                                             Attorneys for Plaintiff
                                         330 East Fulton
                                         Grand Rapids, MI 49503
                                         (616)235-2300

330 E. FULTON
GRAND RAPIDS, MI 49503
TELEPHONE: 616/235-2300
FAX: 616/459-0137

DILLEY HANEY P.C.
ATTORNEYS AT LAW

11